IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

CALVIN L. MOORE                                                                          PLAINTIFF

v.                                    Civil No. 13-2179

CAROLYN W. COLVIN,[1] Commissioner
Social Security Administration                                                           DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Calvin T. Moore, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for supplemental security income under Title XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.    Procedural Background**

Plaintiff applied for SSI on December 6, 2010. (Tr. 11.) Plaintiff alleged an onset date of January 1, 2003 due to being bipolar, having been incarcerated for thirty-four years, finding it hard to deal with people, and having asthma. (Tr. 182.) Plaintiff's applications were denied initially and on reconsideration. Plaintiff requested an administrative hearing, which was held on April 23, 2012. (Tr.11.) Plaintiff was present to testify and was represented by counsel. (Tr. 25.) The ALJ also heard testimony from Vocational Expert ("VE") Patty Cant. (Tr. 26.)

At the time of the administrative hearing, Plaintiff was 54 years old, and possessed a seventh-grade education, special education track. (Tr. 30, 43.) The Plaintiff had past relevant work experience ("PRW") as an Industrial Cleaner and Automotive Press Operator. (Tr. 18.)

---

[1] Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

On July 20, 2012 , the ALJ concluded that the Plaintiff suffered from the following severe impairments: osteoarthritis, mild degenerative disc disease of the lumbar spine, history of asthma, history of Hepatitis C, Cognitive Disorder/Borderline Intellectual Functioning, Adjustment Disorder, Mood Disorder and Personality Disorder. (Tr. 13.) The ALJ found that Plaintiff maintained the residual functional capacity to perform light work, "except that "he is limited to only occasional overhead work and he must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. The claimant is further able to perform simple, routine, repetitive tasks in a setting where interpersonal contact is incidental to the work performed and the supervision required is simple, direct, and concrete. " (Tr. 15.)With the assistance of the VE, the ALJ determined that the Plaintiff could perform his past relevant work of Industrial Cleaner as he previously performed it, but not as it is generally performed, and Automotive Press Operator. (Tr. 18.)

Plaintiff requested a review by the Appeals Council on August 6, 2012. (Tr. 6.) The Appeals Council declined review on May 28, 2013. (Tr. 1.)

**II.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*.  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent

positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)©. A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § 404.1520, 416.920 (2003).

### III. Discussion

Plaintiff raises one issue on appeal: 1) the ALJ erred by failing to address the opinions of treating sources, failing to assign weight to those opinions, and failing to provide a rationale for rejecting those opinions. (Pl.'s Br. 13, 14, 17.)

The argument that the ALJ failed to assign weight to the opinion is not facially supported by the record. The ALJ explicitly stated: "The undersigned affords greater weight to the findings of the claimant's attending and examining clinicians and physicians due to their treatment history and degree of contact with the claimant. " (Tr. 18.) Thus, the ALJ's assignment of weight to the opinions is at least facially valid.

However, this Court agrees that there are some troublesome gaps of information that the ALJ failed to explicitly discuss or discredit. An ALJ is free to discount a physician's report if the record warrants that decision. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007). However, under the Agency's own policy interpretations, the ALJ must "provide appropriate explanations for accepting or rejecting" medical source opinions about what an individual can still do in making their Overall RFC assessment. SSR 96-5p.

In this case, the claimant's treating physicians have primarily been the Arkansas Department of Corrections ("ADC") physicians and the Choctaw Nation Health Services ("CNHS") physicians.

Regarding Plaintiff's physical status, the ADC physicians have consistently placed physical work restrictions in the Plaintiff's file. In January of 2002, the Plaintiff was to do no overhead work, no lifting in excess of 20 lbs, and no excessive exposure to dust pollen and chemicals. These restrictions were the result of a diagnosis of asthma, history of surgery to right hand, and arthritic shoulders. (Tr. 258.) In April of 2005, Plaintiff had the following work restrictions assigned:

> 1. Restrict assignments required prolonged crawling, stooping, running, jumping, walking or standing;
> 2. Restrict assignment requiring strenuous physical activity for periods in excess of 0.
> 3. Restrict assignment requiring handling, lifting or heavy materials in excess of 19 pounds or requiring overhead work for a period in excess of 0.

(Tr. 260.) In October of 2011, he was restricted from assignments requiring prolonged crawling, stooping, running, jumping, walking, or standing. (Tr. 677, 679.) In March of 2012, he was assigned to one arm/hand duty for 30 days due to shoulder pain. (Tr. 696.)

None of the postural limitations from the ADC physicians, which include limitations that one might typically expect for someone with shoulder and back issues, are present in the ALJ's RFC. Nor are

4

the ADC postural limitations discussed or discredited. This is not congruent with the ALJ's statement that he gave the treating physicians' opinions "greater weight," and therefore requires a remand.

Further, there is no Physical RFC in the record other than the work limitations given by the ADC. The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) Therefore, a claimant's RFC assessment "must be based on medical evidence that addresses the claimant's ability to function in the workplace.""An administrative law judge may not draw upon his own inferences from medical reports."*Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). Instead, the ALJ should seek opinions from a claimant's treating physicians or from consultative examiners regarding the claimant's mental and physical RFC. *Id.*; *Strongson v. Barnhart,* 361 F. 3d 1066, 1070 (8th Cir. 2004.)

In this case, there is no Physical RFC evaluation in the record. Therefore, the ALJ's Overall RFC was based on his own inferences from the medical record. This requires a remand.

Regarding Plaintiff's mental status, he was seen for mental issues by both the ADC and CNHS physicians. These physicians prescribed various psychotropic medications for the Plaintiff, but the most frequent prescriptions seem to be Celexa/Citalopram,[2] Risperdal,[3] and Seroquel.[4] (*See e.g.* Tr. 359, 425, 430, 492. ) He was discontinued from the Celexa by the ADC in March 2010 because he was not compliant in taking it and reported that he would not take it when he was out. (Tr. 644. ) At his hearing he testified that during his last time in jail he was only given Albuterol for his asthma, and that he was not on any medications at all at the time of the hearing.(Tr. 65.) He presented for voluntary inpatient treatment

---

[2]Celexa is the brand name for Citalopram Hydrobromide. It is a selective serotonin reuptake inhibitor indicated for treatment of depression. http://www.pdr.net/drug-summary/celexa?druglabelid=1325&id=447. (accessed Apr. 25th, 2014.)

[3]Risperdal is a benzioxazole derivative indicated for treatment of schizophrenia. http://www.pdr.net/drug-summary/risperdal?druglabelid=977&id=606. (accessed Apr. 25, 2014.)

[4]Seroquel is a dibenzapine derivative indicated for treatment of schizophrenia. http://www.pdr.net/drug-summary/seroquel?druglabelid=2185&id=124 (accessed Apr. 25, 2014.)

at Hillcrest Behavioral Healthcare in September 2008, because he was hearing voices. (Tr. 396.) He was seen by consulting examining psychiatric specialists Dr. Spray and Dr. Kralik, with Dr. Kralik examining plaintiff in May 2008 and June 2011. (Tr. 342, 538,588.) Plaintiff's Axis V (GAF) scores to date have all hovered around fifty: 50/60, 51-60, 50, and 45-55. (Tr. 348, 396, 542, 595.) The Mental RFC form was completed on April 2011, and indicated that the Plaintiff had either moderate or no limitations on all categories. (Tr. 567-70.)

The overall assessment on the Mental RFC was repeated essentially verbatim in the ALJ's mental portion of his Overall RFC. (Tr. 15. ) The ALJ included all of the diagnoses from Dr. Kralik in his listing of severe impairments, and most of the diagnoses from Dr. Spray. He discussed the Hillcrest incident. (Tr. 13.)The ALJ also noted that the Plaintiff was currently living in a tent on the banks of the Arkansas River. (Tr. 14 )

However, the ALJ did not discuss or discredit the diagnosis of Schizoaffective Disorder by the CNHS and Hillcrest physicians. (Tr. 391, 396.) He did not include Dr. Spray's diagnosis of antisocial and schizoid features for his Personality Disorder. (Tr. 541.) He did not discuss or discredit the fact that the Plaintiff had been prescribed medications for schizophrenia by both the ADC and CNHS physicians. He did not discuss or discredit Plaintiff's consistently low Axis V (GAF) scores by examining and treating physicians.[5] This requires a remand.

The failure to discuss consistently low GAF scores by multiple psychiatric specialists is particularly troubling. While a GAF score alone is not determinative, the Eighth Circuit Court of Appeals has recognized that GAF scores are relevant evidence in evaluating a disability claim. *See e.g. Pates-Fires v. Astrue*, 564 F.3d 935, 944 (8th Cir. 2009) (a history of GAF scores at or below 50 indicates "serious impairment in social, occupational, or school functioning."); *Brueggemann ,* 348 F.3d at 695 (a history

---

[5]The 50/60 GAF assessed by Hillcrest is listed as part of the Hillcrest medical summary, but it not otherwise discussed or discredited.

of GAF score of 50 reflects a serious limitation on a claimant's ability to perform basic life tasks; VE testified that an individual with a GAF score of 50 could not work)).

On remand for Plaintiff's physical issues, the ALJ is directed to obtain a Physical RFC evaluation from a treating physician or a consultative examiner. The ALJ is then directed to present the findings of this Physical RFC to the VE, in person or by interrogatory. The VE's testimony must then be used in developing the Overall RFC.

On remand for Plaintiff's mental issues, the ALJ must explicitly discuss or discredit all of the Plaintiff's mental health diagnoses, with particular emphasis on the Schizoaffective components, the low GAF scores, and with a thorough exploration of why the Plaintiff may not be taking any medications. If the ALJ deems it necessary due to updated information on remand, a second Mental RFC should be ordered.

### IV. Conclusion

Based on the foregoing, we recommend reversing the decision of the ALJ and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 25th day of April 2014.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A (Rev. 8/82)